William R Murray, J.
Defendants Darling are brothers, one of whom is presently serving in the United States Navy. Pursuant to the request of another brother, an attorney acting as their counsel, they were brought before me at four o’clock of a Sunday morning for arraignment. For the convenience of the parties and with the concurrence of the Police Department of the City of Troy and of the defendants, the proceedings were held in the basement of my residence.
Defendants were charged by two officers of the Troy Police Force with various offenses, arising out of an apparent "evening on the town” in view of leave granted to Theodore Darling from his naval duties. Theodore was accused by the arresting officers of violations of section 1192 of the Vehicle *488 and Traffic Law pertaining to driving while under the influence of alcohol. William Darling was accused of public intoxication, lewdness and violation of an ordinance of the City of Troy concerning open containers.
Attorney Darling advised the court that the office of the Rensselaer County District Attorney had been informed of the proceedings but no representative of that office appeared. Defendants were accorded all the statutory warnings and then arraigned. Since defendant Theodore Darling had orders to report to his naval base in Brooklyn the following day, the court granted counsel’s request for immediate disposition of the matter, fully aware that CPL 170.15 (subd 2) requires remission of the action to an inferior criminal court but considering the provision to be in defiance and derogation of the Constitution of the State of New York.
The Constitution of the State of New York, last passed by the Legislature and approved by the people, provides that the Supreme Court "shall have general original jurisdiction in law and equity” (N.Y. Const, of 1938, art 6, § 7, subd a). This mandate of power is not new but is a reaffirmation of the inherited authority of the Supreme Court, established by statute in 1691, to apply and perpetuate the English common law for the establishment of justice, order and stability in the struggling young colony. The enactment was repassed from time to time[1] and its provision, almost in identical words, were adopted in the first Constitution of 1777 and continued, without meaningful or substantial change, in all Constitutions through the one of 1938 now in force. (See Matter of Steinway, 159 NY 250, 255-258; People ex rel. Folk v McNulty, 256 App Div 82, 89-91.)
Quoting from Fowler’s treatise on the Supreme Court (Fowler’s Organization of the Supreme Court, 19 ALJ 211), Judge Vann notes in the case first cited (p 256): " 'Not only did this act erect the tribunal which still continues the great law court of the state, but it vested in it a jurisdiction which change of government and constant reforms and revolutions in procedure have been powerless to abridge in any material respect, for while its jurisdiction has been enlarged by its union with the Court of Chancery, its ancient jurisdiction still remains unimpaired.’ ”
*489 Thus, first by statute and later by Constitution, the Supreme Court was endowed with all the authority and powers of the Court of King’s Bench and the Court of Chancery in England: jurisdiction to hear and determine any justiciable question of which the common law or chancery courts of England would have had cognizance, and all causes of action, both civil and criminal. (Matter of Stein way, supra, p 258; Matter of Niagara Falls Power Co. v Halpin, 267 App Div 236, 241, affd 292 NY 705; People ex rel. Folk v McNulty, supra, pp 91-92.)
The criminal jurisdiction of the Supreme Court is inherited from the Court of King’s Bench which had "general superintendency over all courts of inferior jurisdiction and might remove to itself by certiorari all proceedings from any of them. (1 Chitty Cr. Law, 374.) The court took cognizance both of criminal and civil causes. (1 Holdsworth’s History of English Law, pp 212-213.)” (People ex rel. Folk v McNulty, supra, p 91; see, also, People v Washor, 196 NY 104, 107; Smith v People, Al NY 330; People ex rel. Newton v Special Term, Part I, 193 App Div 463, 468-471; People v Humphrey, 122 Mise 303, 305.)
The circumstance that another court has been given additional or similar jurisdiction, of course, cannot deprive the Supreme Court of its general constitutional jurisdiction. (Barone v Aetna Life Ins. Co., 260 NY 410, 414; Klein v City of New York, 234 App Div 455.) Indeed, as a tribunal of general jurisdiction, the Supreme Court is presumed to have authority to hear and determine any cause unless the contrary plainly appears. (Condon v Associated Hosp. Serv., 287 NY 411, 414-415; Jones v McNeill, 51 Misc 2d 527, 529 [Cooke, J.].) Such jurisdiction is "inalienable, and carries with it the corresponding duty on the part of those courts to exercise it.” (Alexander v Bennett, 60 NY 204, 207.)
Possessed of immense and inherent power (Kagen v Kagen, 2l NY2d 532;[2] Matter of Schneider v Aulisi, 307 NY 376), the Supreme Court may award a party appropriate and complete relief, in accord with the exigencies of the case, to do justice and to promote equity (Leader v Durst, 26 AD2d 705, 706; Kaminsky v Kahn, 23 AD2d 231, 236).
The permanent "sweep of the power granted to the Su *490 preme Court by the People” (Vazquez v Vazquez, 26 AD2d 701, 703), "is constitutionally unlimited and illimitable” authority (1136 East Corp. v New York State Liq. Auth., 58 Misc 2d 217, 222) which renders it "competent to entertain all causes of actions” (Thrasher v United States Liab. Ins. Co., 19 NY2d 159, 166) may not be abridged, abrogated, curbed, limited, qualified or whittled away to any degree or in any respect by a transient legislative body and an attempt to do so is patently void and of no effect (People v Allen, 301 NY 287, 290; Busch Jewelry Co. v United Retail Employees’ Union, 281 NY 150, 156; People ex rel. Swift v Luce, 204 NY 478, 487-488; Matter of Stilwell, 139 NY 337, 341; People ex rel. Mayor of City of N. Y. v Nichols, 79 NY 582, 589-590; Matter of Niagara Falls Power Co. v Halpin, 267 App Div 236, 241, affd 292 NY 705, supra; United Baking Co. v Bakery & Confectionery Workers’ Union, 257 App Div 501, 505, 507; People ex rel. Folk v McNulty, 256 App Div 82, 89, supra; Decker v Canzoneri, 256 App Div 68, 71, 72).
In Matter of Malloy (278 NY 429, 432), the Court of Appeals dispelled any doubt as to the unfettered and unalterable power of the Supreme Court, saying: "The Legislature cannot by statute deprive it of one particle of its jurisdiction, derived from the Constitution”.
By statute, as well as by virtue of its broad constitutional criminal powers, the Supreme Court may arraign a defendant upon an information (CPL 170.15, subd 2). After, albeit unnecessarily and redundantly, bestowing this already existing constitutional authority on the Supreme Court, the Legislature, in this same subdivision, attempts to tinker with and to thwart the fundamental law of the State by directing a remission to a local criminal court for further action and disposition in such a case (CPL 170.15, subd 2), thus depriving this great court of one of its primary powers: the right to try criminal offenses constituting misdemeanors.
Indeed, it would take away in one statute a jurisdiction which, confusedly and inconsistently, it awarded to this court in another. CPL 10.20 (subd 1) provides that the Supreme Court has "(b) Trial jurisdiction of misdemeanors concurrent with that of the local criminal courts.”
The Constitution is not subject to such caprices, fine distinctions and muddlesome meddling by a body whose existence is impermanent, perishable and precarious.
The constitutional and statutory authority of the Supreme *491 Court to try and punish defendants for misdemeanors they have committed is confirmed in the cases of past and present eras. (E.g., see People v Harris, 123 NY 70; De Hart v Hatch, 3 Hun 375, supra; People ex rel. Constantinople v Warden, 72 Misc 2d 906; People v Rutiles, 172 Misc 306.)
In the De Hart case, cited with approval by the Court of Appeals in People ex rel. Swift v Luce (204 NY 478, 487), the Appellate Division of the First Department wrote (supra, pp 380-381): "It [the jurisdiction of the Supreme Court] was rendered permanent and uniform in its nature, and as those attributes are provided for it by the fair import of the Constitution, it has not been left to the legislature either to abridge or limit them by any interposition on its part. For, if anything of that kind can be accomplished by legislation, then the jurisdiction can be by law abridged and reduced; and that would so far nullify the provision that there shall be such a court as the Constitution has described, as such legislation might be made to extend. From the nature of the unqualified jurisdiction created, the legislature very clearly could not have provided that the Supreme Court should not have the power to entertain, hear and decide the cases enumerated in the act of 1872. If that could be done, then the jurisdiction of the court would depend upon the legislature instead of the Constitution; and if it should be done, the court would no longer have general jurisdiction in law and equity, as the Constitution has provided that it shall have. If the legislature can declare that the court shall have no jurisdiction over one class of cases, it may do so as to all, and in that way the provision contained in the Constitution could be completely abrigated. A law of that description, would hardly be claimed to be capable of being sustained * * * The court has no legislative authority, and no power to decline or refuse the jurisdiction provided for it by the Constitution. If it had, it might impair and abridge its jurisdiction so far as to render the tribunal comparatively useless, which, the Constitution has declared, shall be the most comprehensive in the State. Upon this subject, neither the court nor the legislature has any power of election whatever. The court exists solely under the Constitution, and while it does so, it must be what that instrument has declared it shall be: a court of general jurisdiction in law and equity. And that includes the authority, as well as the duty, of hearing and deciding all actions of a legal or equitable nature; for the term, general, includes all.”
*492 Such language dispels all doubt as to the right of this court to try criminal offenses of any nature or quality despite restrictions a passing legislative body seeks to place upon its powers. This being so, it has the authority also to accept a guilty plea to the crime charged or to a lesser one as a natural and obvious concomitant of its broad and general jurisdiction.
If it be considered a reasonable procedural requirement that the District Attorney give his consent to a reduced charge, the requirement would have been waived by his failure to appear after receiving notice of the proceedings. In any event, the charges were not reduced but amended with the concurrence of the arresting authorities to more accurately describe the offenses allegedly committed. Different in nature, they were equally serious in character and did not — nor was it intended to — mitigate the offenses to which defendants pleaded guilty.
The proceedings herein may strike some as novel because tried in unaccustomed surroundings by the Supreme Court which, probably for its own comfort and convenience, does not often invade the arenas where the minor crimes are encountered. The portals of this court "may have rusted at the hinges from disuse, but the doors can still be opened” (People v Fay, 48 NYS2d 2, 5, app dismd 268 App Div 135). The circumstances that the power of the Supreme Court to hear such cases is seldom employed and is exercised more usually by courts of lesser jurisdiction is not ground for divesting it of the criminal power vested in it by the State Constitution (People v Fay, supra; see, also, Matter of Malloy, 278 NY 429, 432, 433, supra).
I accept the plea of Theodore Darling to guilty of the misdemeanor of reckless driving (Vehicle and Traffic Law, § 1190) and impose a fine of $100, the execution of which is suspended since he is a first offender.
I accept the plea of William Darling to guilty of the violation of public intoxication (Perial Law, § 240.40) and impose a fine of $25, the execution of which is suspended since he is a first offender.
The other charges are dismissed.

. The grant of power given to the Supreme Court was recognized and renewed either by acts of the colonial Legislature or by royal'ordinances.

. "The Supreme Court is a court of original, unlimited and unqualified jurisdiction.” (P 537.)